JOURNAL ENTRY AND OPINION
{¶ 1} In Case No. 85054, appellant-mother, A.D., appeals the judgment of the Cuyahoga County Common Pleas Court, Juvenile Division, that granted permanent custody of her child, M.C., to appellee, the Cuyahoga County Department of Children and Family Services ("CCDCFS"). In Case No. 85108, appellant-grandmother, T.T., appeals from the trial court order denying her motion for legal custody of M.C. The cases were consolidated for appeal.
 {¶ 2} CCDCFS removed M.C. from her mother's care in March 2001. Over the next two years, M.C. was placed with various relatives. M.C.'s paternal grandmother, T.T., was eventually appointed legal custodian of M.C. in June 2003. CCDCFS removed M.C. from T.T.'s care after only seven months, however, and subsequently filed a complaint alleging neglect and seeking permanent custody. In its complaint, CCDCFS alleged that T.T. had failed to ensure M.C.'s attendance at school and counseling, despite being ordered by the court to do, failed to provide stable and adequate housing for her, and failed to protect her from exposure to her drug-addicted mother, A.D. CCDCFS's complaint further alleged that A.D. had a chronic and severe substance abuse problem that prevented her from providing a safe and stable home for M.C., did not have stable and appropriate housing, and had been convicted of receiving stolen property and subsequently incarcerated for a parole violation due to her drug abuse.
 {¶ 3} On March 31, 2004, the trial court held an adjudicatory hearing, at which A.D. and T.T. admitted the allegations of the complaint, as amended. After hearing testimony regarding the allegations against A.D. and T.T., the trial court adjudicated M.C. neglected. It journalized an entry to that effect on April 6, 2004 and included in its entry an order continuing its previous order of temporary custody to CCDCFS.
 {¶ 4} At the commencement of the subsequent dispositional hearing, A.D. advised the trial court that she was in agreement with CCDCFS's requested disposition of permanent custody for M.C. After taking testimony at the hearing, the trial court denied T.T.'s motion for legal custody and awarded permanent custody of M.C. to CCDCFS. Both A.D. and T.T. now appeal from the trial court's ruling.
 {¶ 5} In her first assignment of error, A.D. contends that the trial court did not comply with Juv.R. 29 when it accepted her admission to the amended complaint at the adjudicatory hearing and, further, that her admission was not made knowingly, intelligently and voluntarily.
 {¶ 6} Before addressing the merits of this assigned error, however, we must determine whether this issue is timely appealed pursuant to App.R. 4(A). In general, an aggrieved party has 30 days from the time an adjudication order is entered to appeal that order when it is accompanied by a temporary order of disposition. In re Murray (1990),52 Ohio St.3d 155, syllabus. "An adjudication by a juvenile court that a child is `neglected' or `dependent' * * * followed by a disposition awarding temporary custody to a public children services agency * * * constitutes a `final order' within the meaning of R.C. 2505.02 and is appealable to the court of appeals * * *." Id.; see, also, In re MichaelA. (Mar. 21, 2002), Cuyahoga App. No. 79835.
 {¶ 7} Under App.R. 4(A), a notice of appeal is timely if it is filed "within thirty days of the later of entry of the judgment or order appealed or, in a civil case, service of the notice of judgment and its entry if service is not made on the party within the three day period in [Civ.R.] 58(B)." Thus, App.R. 4(A) contains a tolling provision that applies in civil case, including juvenile cases.
 {¶ 8} Civ.R. 58(B) requires the court to endorse on its judgment "a direction to the clerk to serve upon all parties * * * notice of the judgment its date of entry upon the journal." The clerk must then serve the parties within three days of entering judgment upon the journal and note the service in the appearance docket. "The thirty-day time limit for filing the notice of appeal does not begin to run until the later of (1) entry of the judgment or order appealed if the notice mandated by Civ.R. 58(B) is served within three days of the entry of the judgment; or (2) service of the notice of judgment and its date of entry if service is not made on the party within the three-day period in Civ.R. 58(B)." Whitehallex rel. Fennessy v. Bambi Motel, Inc. (1998), 131 Ohio App.3d 734, 741.
 {¶ 9} Here, the trial court's order adjudicating M.C. as neglected and continuing its previous order placing her in the temporary custody of CCDCFS was journalized on April 6, 2004. Pursuant to In re Murray, this order was capable of immediate review so long as the parties were served notice of this judgment in accordance with Civ.R. 58(B) and thereafter satisfied the time requirements for the filing of an appeal pursuant to App.R. 4(A). It is the service of notice, and adequate proof thereof, not actual notice, that is required by Civ.R. 58(B). See In re L.B., Cuyahoga App. Nos. 79370 79942, 2002-Ohio-3767m at ¶ 11.
 {¶ 10} The record in this case, however, does not reflect that any ofthe parties were served as required by Civ.R. 58(B). It is true that the April 6th order includes language directing the clerk to "serve upon the parties notice of this judgment and its date of entry upon the journal." The court's appearance docket reflects the journalization of this order on April 6, 2004. There is no notation, however, on the docket or anywhere within the record, for that matter, that any of the parties were served as is required by this rule. Indeed, the docket entry reads only: "Matter is set for trial hearing on 5/20/2004 at 9:00 a.m. JE dated 3/31/04 journalized on 4/6/04 MM. VOL. 16 PG. 9324-5." Nowhere in this entry is there any indication that the court served A.D. or T.T. with a copy of this judgment.
 {¶ 11} "The opportunity to file a timely appeal pursuant to App.R. 4(A) is rendered meaningless when reasonable notice of an appealable order is not given." Moldovan v. Cuyahoga Cty. Welfare Dept. (1986),25 Ohio St.3d 293, 295. By promulgating Civ.R. 58(B), the Ohio Supreme Court required trial courts and court clerks to provide notice of a judgment by service on the parties and to note that service on the appearance docket. When a court fails to make a notation of service on the appearance docket, despite including language in its order consistent with a court's directions to serve the parties, the time for filing a notice of appeal has not begun to run and an appeal from such an order is considered timely. See In re Aldridge, 4th Dist. No. 02CA2661, 2002-Ohio-5988, at ¶ 9-14; see, also, In re Bays, 2nd Dist. Nos. 2002-CA-52 56, 2003-Ohio-1256, at ¶ 5; In re Raypole, 12th Dist. Nos. CA2002-01-001 002, 2003-Ohio-1066, at ¶ 26-28; In re Grace
(Mar. 20, 2002), 5th Dist. No. 01CA85.
 {¶ 12} Although we find that the time for appealing the April 6, 2004 adjudication order has been tolled because there is no notation on the appearance docket that A.D. or T.T. were served notice of the order, CCDCFS complains that this court cannot consider A.D.'s first assignment of error, or any other error that relies on the transcripts in the record, because the certification pages of the transcripts are unsigned and, therefore, not certified in compliance with App.R. 9(B). As directed by the Supreme Court of Ohio in Farmers Banking Co. v. Hinkle (1976),46 Ohio St.3d 274, we will not construe App.R. 9(B) in a hyper-technical manner. Id., at 377. We are reluctant to conclude that the lack of a signature on the certification page is fatal under App.R. 9(B), especially when all other requirements for certification are satisfied. Nonetheless, we directed the court reporter to take the necessary steps to correct this omission. See Motion No. 370609.
 {¶ 13} Finally, CCDCFS contends that A.D. waived the issue for review on appeal because she failed to challenge the adjudication order in the trial court despite being present at the subsequent dispositional hearing.
 {¶ 14} We recognize that A.D. did not object at any point during the proceedings below regarding the court's failure to comply with Juv.R. 29(D). It is true that, in general, a reviewing court will not consider issues that an appellant failed to first raise in the trial court. SeeState ex rel. Quarto Mining Co. v. Foreman (1997), 79 Ohio St.3d 78, 81. If the error is apparent on the face of the record and it is prejudicial to the appellant, however, application of the plain error doctrine will permit correction of judicial proceedings. Reichert v. Ingersoll (1985),18 Ohio St.3d 220, 223. The doctrine is applicable in civil cases only in the extremely rare case where the error "seriously affects the basic fairness, integrity, or public reputation of the judicial process."Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, 122-123.
 {¶ 15} The termination of parental rights is "the family law equivalent of the death penalty." In re Hayes (1997), 79 Ohio St.3d 46, 48; see, also, In re Murray, 52 Ohio St.3d at 156 (parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential" and "basic civil right" to raise his or her children).
 {¶ 16} Because this is so, a trial court's failure to comply with Juv.R. 29(D) has been found to constitute plain error in cases involving termination of parental rights. See In re S.G. M.G., 2005-Ohio-1163;In re Elliot, 4th Dist. Nos. 03CA65 66, 2004-Ohio-2770, at ¶ 15; In reAldridge, 2002-Ohio-5988, at ¶ 16. In light of the plain error in this case, we are unable to conclude that A.D. waived this issue for review.
 {¶ 17} Having determined that there is no impediment, jurisdictional or otherwise, to this court's review of the April 6, 2004 adjudication order, we now consider whether the trial court erred when it accepted A.D.'s admission to the amended complaint, as asserted in her first assignment of error.
 {¶ 18} Juv.R. 29(D) governs the procedure for accepting an admission and provides, in relevant part:
 {¶ 19} "The court * * * shall not accept an admission without addressing the party personally and determining both of the following:
 {¶ 20} "(1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission;
 {¶ 21} "(2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent and to introduce evidence at the adjudicatoryhearing." (Emphasis added.)
 {¶ 22} Thus, a trial court must carefully inquire as to whether the admission is voluntarily, intelligently, and knowingly entered. In reBeechler (1996), 115 Ohio App.3d 567, 571-572. A court's failure to so comply constitutes prejudicial error, requiring reversal of the adjudication order. Id.; see, also, In re Onion (1998),128 Ohio App.3d 498, 503, citing State v. Ballard (1981),66 Ohio St.2d 473, 476.
 {¶ 23} Here, the record reflects that after CCDCFS moved to amend its complaint, counsel for both A.D. and T.T. informed the court that each was prepared to enter an admission to the complaint as amended. First addressing T.T., the trial judge stated:
 {¶ 24} "[T.T.], we are here this morning on what is referred to as adjudication. This is the complaint for neglect and permanent custody, which is a series of allegations. It doesn't mean that you or yourdaughter (sic) have done any of these things that is (sic) stated here.
 {¶ 25} "* * *
 {¶ 26} "[T]hese are just allegations and we are here for adjudication. That's to determine what will go before the court on what's called disposition of this matter, meaning the trial. That's when it isdetermined whether any of these allegations are true."
 {¶ 27} The prosecutor then asked the court to advise A.D. and T.T. of the rights they would be waiving by admitting to the amended complaint. The trial judge then stated:
 {¶ 28} "Very well. The court will direct its remarks to the mother, A.D., and also to the paternal grandmother, T.T. The court has to explain to you what your constitutional rights are before there can be adjudication and before there can be a hearing on disposition. Under the law, the court must inform you of those rights and number one, that you must be appointed counsel to represent you."
 {¶ 29} The trial judge then confirmed with T.T. that counsel had discussed the allegations in the complaint with her. Continuing, the judge stated,
 {¶ 30} "Okay. The court will also call to your attention, you have a right during the hearing of this matter, you have the right to call whatever witnesses you would like to have on your behalf, that they would be summoned by the court and that would be at the expense of the State. You understand, you would not have to pay for whatever witnesses you want to call?"
 {¶ 31} After T.T. responded affirmatively, the trial judge continued:
 {¶ 32} "During the disposition hearing, you have the right to remain silent, meaning you don't have to take the witness stand if you so choose not to. That cannot be held against you as a constitutional right. If you feel you don't want to take the witness stand, or even if you don't have witnesses, that's fine. There is no reason for you to have them. That's your right, do you understand that?"
 {¶ 33} T.T. again responded affirmatively, and the trial judge stated:
 {¶ 34} "And also the agency will be bringing in witnesses to testify to these allegations. Your lawyer will have the right on your behalf to cross-examine those witnesses and to determine, so that the court candetermine if there is any validity to these allegations."
 {¶ 35} "* * *
 {¶ 36} "In the event it was found that there was sufficient evidencefor neglect and permanent custody, that would mean the child would be removed from the home * * *.
 {¶ 37} "In other words, when we have the hearing, at this point, youare not here for the court to determine whether there was neglect and whether the agency should have permanent custody. But if that were to come about, I must explain to you, that's when the child, only then would the child be removed, do you understand that?"
 {¶ 38} After T.T. answered affirmatively, the trial judge then addressed A.D. The trial judge confirmed that she had heard the remarks he had made to T.T. and then stated:
 {¶ 39} "So you do understand that you have the right to counsel without having paid for it. * * *"
 {¶ 40} "And also the court must call to your attention, if we do go totrial, you, too, have the right to remain silent. You do not have to take the witness stand. * * *
 {¶ 41} "Also, you understand that your attorney has the right to call whatever witnesses you feel he should have testify at this case * * *.
 {¶ 42} "And also the agency, the prosecutor will call witnesses to substantiate these alleged violations. It isn't that they have beendetermined, they are alleged violations. They have a right to call witnesses to support that and your attorney has the right to cross-examine them as to what they testify." (Emphasis added.)
 {¶ 43} On this record, it is apparent that the trial judge did not comply with the requirements of Juv.R. 29(D) before accepting A.D.'s admission to the amended complaint.
 {¶ 44} First, we find nothing in the record which indicates that the trial judge ascertained that A.D. and T.T. understood that the purpose of the hearing was to determine whether M.C. was neglected. Indeed, the trial judge specifically told the parties, "you are not here for the court to determine whether there was neglect." Although, upon the prosecutor's request, the trial judge later attempted to correct this misstatement, our review of the record indicates that he did not adequately correct the error. Although he asked T.T. and A.D. whether they admitted to the allegations of the amended complaint, he did not question them to determine that either of them understood the nature and purpose of the adjudicatory hearing.
 {¶ 45} Moreover, the trial judge did not inform A.D. or T.T. that, by entering an admission, they were admitting to the truth of the allegations in the amended complaint and to a finding of neglect by the court. See Juv.R. 29(D)(1). Rather, the judge repeatedly told them that the allegations of the complaint were only "alleged violations" whose validity would be determined later at the dispositional hearing. Indeed, the judge specifically told T.T. that the complaint "doesn't mean that you or [A.D.] have done any of these things that is (sic) stated here" and "the agency will be bringing in witnesses to testify to these allegations * * * so that the court can determine if there is any validity to these allegations." Likewise, after asking A.D. whether she admitted to the allegations of the amended complaint, he told her, "Again, the court calls to your attention that these are allegations" and "the prosecutor will call witnesses to substantiate these alleged allegations."
 {¶ 46} We agree with A.D. that the trial court's repeated misstatements that these are "just allegations" that would later be substantiated created the false impression that A.D. and T.T. were merely agreeing to a later trial on the amended allegations, when they were actually stipulating to the facts contained in the allegations and to a finding of neglect.
 {¶ 47} Finally, although Juv.R. 29(D)(2) provides that the trial court must confirm that a party understands that by entering an admission, she is giving up the rights to challenge witnesses, remain silent and introduce evidence at the adjudicatory hearing, the record indicates that the trial judge told both A.D. and T.T. that these rights applied at the dispositional hearing. He specifically told T.T. that she had the right to remain silent "during the disposition hearing," and told A.D. that, "if we do go to trial, you, too, have the right to remain silent." At no time did the trial court ever inform the parties that they were giving up these rights at the adjudicatory hearing by entering an admission to the amended complaint.
 {¶ 48} On this record, it is apparent that the trial court did not sufficiently comply with the requirements of Juv.R. 29(D) in accepting A.D. and T.T.'s admission to the amended complaint. Accordingly, neither A.D.'s nor T.T.'s admission was made "with understanding of the nature of the allegations and the consequences of the admission."
 {¶ 49} Accordingly, A.D.'s first assignment of error is sustained. Moreover, although T.T. does not argue that the trial court erred in accepting her admission, because the error is so apparent from the face of the record, we find that her admission was similarly deficient.
 {¶ 50} In light of our disposition of A.D.'s first assignment of error, we need not address the remaining assignments of error. See App.R. 12(A)(1)(c).
 {¶ 51} The order of the Juvenile Court adjudicating M.C. as neglected is hereby reversed. Without an order of adjudication, the dispositional award of permanent custody of M.C. to CCDCFS cannot stand and, therefore, is likewise reversed. This case is remanded for further proceedings consistent with this opinion.
Reversed and remanded.
This cause is remanded for further proceedings consistent with the opinion herein.
It is, therefore, ordered that appellants recover from appellee costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., P.J., and Rocco, J., concur.