JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, M.G.[1] ("mother") appeals the decision of the Cuyahoga County Juvenile Court finding that her son L.C. was a dependent child and its subsequent disposition granting Cuyahoga County Department of Children and Family Services ("CCDCFS") permanent custody of him. The mother contends the court accepted her admission of dependency in violation of Juv.R. 29(D). Because we find that the trial court did not substantially comply with the requirements of Juv.R. 29(D)(1) that the admission be voluntary and made with an understanding of its consequences, we reverse and remand.
 {¶ 2} On January 8, 2007, CCDCFS filed a complaint in the Juvenile Court alleging that L.C. was a dependent child because of the mother's inability to provide care for the child due to the mother's mental retardation and because no relatives were available to care for the child.
 {¶ 3} On June 15, 2007, the adjudicatory hearing was held. At the beginning of the hearing, the complaint was orally amended from "Mother can not provide care for the child, due to mother's mental retardation" to "Mother has been diagnosed mentally-Excuse me. Mildly [sic] Mentally [sic] retarded which may interfere with her ability to parent the child." The complaint was not interlineated to reflect this oral amendment. *Page 4 
 {¶ 4} The mother, through her assigned counsel and appointed GAL, admitted to the amended complaint. Following the mother's admission, the trial court engaged in a colloquy with the mother and began to explain the mother's trial rights.
 {¶ 5} Near the beginning of the colloquy, as the court was explaining the burden of proof, the following exchange took place:
 {¶ 6} "THE COURT: Yes? Do you have a question?
 {¶ 7} "MOTHER: Yes. Okay. I just wanted to say about-Okay. They calling [sic] me retarded. I just want to say that I am not retarded.
 {¶ 8} "MOTHER'S ATTORNEY: They are not calling you retarded, Michelle." (Hearing 6/15/07 at pp. 6-7.)
 {¶ 9} Following this exchange between the mother and her attorney, the court continued on with its colloquy by explaining the right to confrontation. The court did not stop the colloquy and correct the mother's attorney that the complaint and the amended complaint did, in fact, allege that the mother was retarded. The court did not question this exchange or attempt to get further information on what the mother understood as to her mental capacity. Following the hearing, L.C. was found to be dependent.
 {¶ 10} On July 27, 2007, the dispositional hearing was held. The mother, through her assigned counsel and appointed GAL, agreed to the disposition of permanent custody. The trial court then engaged in another colloquy with the *Page 5 
mother and began to explain her trial rights. The court explained the meaning of permanent custody. The mother stated that she was in agreement with permanent custody and that she understood her rights as the mother would be permanently cut off. (7/27/07, pp. 8-9.)
 {¶ 11} Shortly thereafter, however, the following exchange took place:
 {¶ 12} "MOTHER'S ATTORNEY: Just briefly, Your Honor. My client was of the mind that visitation, although she's agreed to the permanent custody disposition, that vistation between her and her son would continue until an adoptive placement was located.
 {¶ 13} "THE COURT: [CCDCFS]?
 {¶ 14} "CCDCFS: Yes, I was going to clear that up. Because she initially said that visits would be allowed until adoption. Which is not the case, as far as we know. All we can say is 45 days it's going to be transferred to the adoption department and then it would be up to them to decide whether they want to maintain visits after that." (Hearing 7/27/07 at pp. 15-16.)
 {¶ 15} Following this exchange, the court continued on with its colloquy by explaining the right to confrontation. No one inquired of the mother if she understood that she was not guaranteed to continue with her visitation. Neither the court, the GAL, nor the mother's attorney made any attempts to ensure that the mother, allegedly mentally retarded, understood the discussion regarding visitation. *Page 6 
 {¶ 16} On August 1, 2007, the trial court issued its decision, granting CCDCFS permanent custody of L.C. In its findings of fact and conclusions of law, the trial court made the following finding:
 {¶ 17} "The chronic mental issues of the mother are so severe that it makes the mother unable to provide an adequate permanent home for the child at this time and, as anticipated, within one year."
 {¶ 18} It is from this decision that the mother now appeals and raises six assignments of error for our review. We shall address Assignment of Error IV first because it requires us to reverse and remand this case.
 {¶ 19} "IV. The lower court violated Juv.R. 29 by accepting the mother's admissions and adjudicating the child dependent."
 {¶ 20} In her fourth assignment of error, the mother argues that the trial court failed to comply with Juv.R. 29(D) when it accepted her admission to the dependency charge. Specifically, the mother contends that the trial court failed to address whether she understood the nature of the dependency allegation and the consequences of her admission.
 {¶ 21} As an initial matter, we note that the termination of parental rights is "the family law equivalent of the death penalty." In reHoffman, 97 Ohio St.3d 92, 2002-Ohio-5368. See, also, In re Murray
(1990), 52 Ohio St.3d 155 (parents have a "fundamental liberty interest" in the care, custody, and management of their children, and an "essential" and "basic civil right" to raise them). Accordingly, when *Page 7 
the State initiates a permanent custody proceeding, parents must be provided with fundamentally fair procedures in accordance with the due process provisions of the Fourteenth Amendment to the United States Constitution, and Section 16, Article I of the Ohio Constitution. In reSheffey, 167 Ohio App.3d 141, 2006-Ohio-619.
 {¶ 22} Pursuant to Juv.R. 29(D), the trial court "shall not accept an admission without addressing the party personally and determining both of the following: (1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission; (2) The party understands that by entering an admission, the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent and to introduce evidence at the adjudicatory hearing."
 {¶ 23} Juv.R. 29(D) places an affirmative duty upon the Juvenile Court. Prior to accepting a parent's admission, the Juvenile Court must personally address the parent appearing before the court and determine that the parent, and not merely the attorney, understands the nature of the allegations and the consequences of entering the admission. The trial court is required to make careful inquiries in order to ensure that the party's admission is voluntary, intelligent, and knowing.In re Beechler (1996), 115 Ohio App.3d 567, 571-72.
 {¶ 24} A trial court's failure to substantially comply with Juv.R. 29(D) constitutes prejudicial error that requires a reversal of the adjudication in order to permit the party to plead anew. Id. We review whether a court has substantially *Page 8 
complied with Juv.R. 29(D) de novo. In re Jones (Apr. 13, 2000), Gallia App. No. 99 CA4.
 {¶ 25} Here, the State contends that the trial court substantially complied with Juv.R. 29(D) because the trial judge personally addressed the mother and "it is entirely possible that [Mother] was diagnosed as mildly mentally retarded and yet still holds a personal belief that she is not retarded."
 {¶ 26} After reviewing the colloquy between the mother and the trial court, we conclude that the court did not substantially comply with Juv.R. 29(D) when it accepted the mother's admission to the dependency charge. While it is true that the court personally addressed the mother, it did not comply with Juv.R. 29(D)(1).
 {¶ 27} First, it is clear from the record that the mother did not fully understand the nature of the allegations. The complaint alleged mental retardation. However, the mother specifically denied that she was retarded. Although the trial court orally amended the complaint to state "mildly mentally retarded," the findings of fact and conclusions of law state that the mother suffers from "severe" mental issues. At no time during the colloquy between the court and the mother did anyone question the mother in order to determine what she understood as to her mental capacity or explain to her that the amended complaint did, in fact, allege that the mother was mentally retarded and therefore could not care for L.C.
 {¶ 28} It is also questionable whether the mother knew the consequences of her admission. There was considerable discussion on the record between the court, *Page 9 
State, GAL, and counsel for the mother, of whether the mother would be able to continue visitation with the child. The record does not indicate that the trial court, or anyone else for that matter, inquired of the mother or determined whether she understood the consequence of agreeing to a disposition of permanent custody. In fact, the record shows that the mother was under a false understanding that she would still be able to visit with L.C.
 {¶ 29} It is clear to us that the trial court failed to determine whether the mother truly understood the allegations against her and it did not adequately inform her of the consequences of her admission, as Juv.R. 29(D)(1) requires.
 {¶ 30} Accordingly, we sustain the mother's fourth assignment of error.
 {¶ 31} "I. The court erred in allowing the amendment to the complaint.
 {¶ 32} "II. The trial court erred in finding dependency in that the evidence presented and the allegations set forth in the amended complaint failed to establish dependency.
 {¶ 33} "III. The court's findings regarding permanent custody were not supported by the evidence.
 {¶ 34} "V. The court erred by conducting a dispositional hearing which violated mother's constitutional rights.
 {¶ 35} "VI. Mother was denied effective assistance of counsel."
 {¶ 36} Based on this disposition, the mother's remaining assignments of error are rendered moot. *Page 10 
 {¶ 37} We reverse the trial court's finding that L.C. is dependent and its grant of permanent custody to CCDCFS and remand this matter for further proceedings consistent with this opinion.
Judgment reversed and remanded.
It is ordered that appellant recover from appellee her costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas, Juvenile Division to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY J. BOYLE, J., and FRANK D. CELEBREZZE, JR., J., CONCUR
[1] The parties are referred to herein by their initials or title in accordance with this Court's established policy regarding non-disclosure of identities in juvenile cases. *Page 1