JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} In these consolidated appeals, Mother, Te.C, and Father, Ti.C, appeal from a juvenile court order that granted permanent custody of their six-year-old daughter, P.C., to the Cuyahoga County Department of Children and Family Services ("CCDCFS" or the "Agency"). Mother and Father each present three assignments of error, which are set forth in the appendix to this opinion, for our review.
I. Temporary Custody {¶ 2} In March 2006, CCDCFS removed P.C. from appellants' home after receiving reports that she had been sexually abused by her father. At an adjudicatory hearing on July 12, 2006, appellants stipulated to the amended allegations of the complaint that 1) in March 2006, the child alleged that Father had touched her buttocks; 2) Father had an anger management problem that might interfere with his ability to parent; 3) police had been summoned to the parents' residence in response to an altercation between Mother and Father; 4) family members had alleged that both Mother and Father had "alcohol issues"; 5) Mother had a history of emotional and mental health issues which required consistent treatment, had been diagnosed as paranoid schizophrenic, and was suffering from bipolar disorder; and 6) Father had been diagnosed with depression in 2003 after a suicide attempt, and had subsequently received successful treatment. *Page 4 
 {¶ 3} The trial court adjudged P.C. to be dependent. A case plan, which included referrals for drug and alcohol assessment and treatment, parenting education, anger management and domestic violence counseling, psychological assessment, and mental health counseling for both appellants, and a sex offender assessment for Father, was implemented.
 {¶ 4} Subsequently, the Agency filed a motion to modify P.C.'s court-ordered visitation schedule with her parents, because the child's therapist had reported that visits with the parents were disrupting the child's progress. Although Mother agreed to a suspension of visits, Father opposed the motion, so the trial court suspended visits pending a hearing. At the subsequent hearing on the Agency's motion, Jill Bacon, P.C.'s therapist, testified that P.C. consistently had an increase in anxiety, nightmares about her parents, and acting-out after visits with her parents. Bacon observed that P.C. had been much calmer since the visits with her parents had been suspended. She testified further that P.C. had reported that she did not miss her parents and did not wish to visit them.
 {¶ 5} Social worker Lisa Knoefel testified at the same hearing that Father had recently been arrested for domestic violence against Mother, and that the couple had resumed their relationship upon Father's release from jail. Knoefel testified further that conflict between the parents during their visits with P.C. had caused the caregiver to cut the visits short. Additionally, Knoefel reported that Mother had *Page 5 
inappropriately struck P.C. during at least one visit. After the hearing, the trial court suspended the parents' visits until further order of the court.
 {¶ 6} In February 2007, CCDCFS filed a motion to modify temporary custody to permanent custody. The trial court held a hearing on the Agency's motion on July 18, 2007, and granted the Agency's motion for permanent custody. Mother and Father both appeal from this order.
II. Compliance with Juv.R. 37 {¶ 7} On July 27, 2006, following an adjudicatory hearing in which the court found P.C. to be dependent, the trial court held a dispositional hearing on the Agency's request for temporary custody of P.C. Unknown to the trial court, the court's digital recording system was not working that day due to a power failure caused by an earlier thunderstorm. Consequently, no transcript of this hearing was provided to this court upon appeal. Neither Father nor Mother appealed the dispositional order of temporary custody that was issued after this hearing, but now assert, on an appeal from the trial court's subsequent order granting permanent custody, that the trial court's failure to provide a transcript of the dispositional hearing mandates reversal.
 {¶ 8} Under Juv.R. 37(A), the juvenile court "shall make a record of adjudicatory and dispositional proceedings in abuse, neglect, dependent, unruly, and delinquent cases; and proceedings before magistrates." *Page 6 
 {¶ 9} Both Mother and Father assert that the trial court's failure to provide a transcript of the dispositional hearing on July 27, 2006 mandates reversal. Appellants do not contend that any error occurred during the hearing, or even that the award of temporary custody to CCDCFS was in error; their argument is merely that the lack of a transcript mandates reversal under Juv.R. 37(A).
 {¶ 10} "It is well-established that a dependency adjudication followed by a disposition awarding or continuing temporary custody of a child to a public children services agency constitutes a final appealable order."In re C.G., Preble App. Nos. CA2007-03-005 and CA2007-03-006,2007-Ohio-4361, at ¶ 11, citing In re Murray (1990), 52 Ohio St.3d 155. Under App.R. 4, a party shall file a notice of appeal within 30 days of the entry of judgment or order appealed from.
 {¶ 11} The trial court adjudged P.C. dependent on July 12, 2006 and a disposition of temporary custody was granted on July 27, 2006. This dispositional order was journalized on August 2, 2006 and copies of the decision were mailed to the parties. No appeal was ever taken from this order. Because appellants never appealed from the August 2, 2006 order, this court has no jurisdiction in this appeal, which was filed on October 5, 2007 and relates only to the order granting permanent custody, to review any alleged errors relating to that order. In reC.G. at ¶ 12; In re X.R., Cuyahoga App. No. 90066, 2008-Ohio-1710, at ¶ 17. *Page 7 
 {¶ 12} As we have no jurisdiction to consider any errors relating to the dispositional order, appellants' argument that the trial court failed to supply a transcript of the temporary custody hearing is meaningless. Furthermore, as appellants assert no error in the proceedings of July 27, 2006, or their outcome, any failure to provide a transcript of those proceedings is irrelevant.
 {¶ 13} Mother also argues that a transcript of the court's in-camera interview of P.C. should have been made available under Juv.R. 37(A). This court has previously noted that although Juv.R. 37(A) requires a record of adjudicatory and dispositional proceedings, the rule provides that "in all other proceedings *** a record shall be made upon request of a party or upon motion of the court," and an in-camera interview with a child "fall[s] under the category of `all other proceedings.'" In reT.W., Cuyahoga App. No. 85845, 2005-Ohio-5446, at ¶ 11. "Thus, a court is not required to make a record of an in-camera interview absent such a request by a party." Id. None of the parties to this matter ever requested that the in-camera interview be recorded. Therefore, the trial court did no violate any procedural requirement of Juv.R. 37(A) regarding the in-camera interview.
 {¶ 14} Mother's and Father's first assignments of error are therefore overruled.
III. Permanent Custody {¶ 15} In their second assignments of error, Mother and Father argue that the trial court erred in granting permanent custody of P.C. to CCDCFS. *Page 8 
 {¶ 16} R.C. 2151.414 allows a court to grant permanent custody of a child to the county if it determines at a dispositional hearing, by clear and convincing evidence, first, that the child cannot be placed with either parent within a reasonable period of time or should not be placed with either parent, and, second, that permanent custody is in the best interest of the child.
 {¶ 17} Clear and convincing evidence is "that measure or degree of proof which is more than a mere `preponderance of the evidence' but not to the extent of such certainty required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."In re Awkal (1994), 95 Ohio App.3d 309, fn. 2, citing Lansdowne v.Beacon Journal Publishing Co. (1987), 32 Ohio St.3d 176, 180-181.
 {¶ 18} In reviewing a trial court's decision in a permanent custody matter, the appellate court affords great deference to the trial court's decision. The trial court is present to observe the parties and gains knowledge which cannot be conveyed in the written record. Trickey v.Trickey (1952), 158 Ohio St. 9, 13. Thus, the trial court's determination in a custody proceeding is subject to reversal only upon a showing of an abuse of discretion. Dailey v. Dailey (1945),146 Ohio St. 93. An abuse of discretion requires an arbitrary, capricious, or unreasonable decision. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
 A. Placement With Either Parent *Page 9 
 {¶ 19} The trial court's determination of whether the child cannot or should not be placed with either parent within a reasonable period of time is guided by R.C. 2151.414(E). That section sets forth 16 factors the court may consider in its determination. It provides that if the trial court finds by clear and convincing evidence that any of the 16 factors exists, the court must enter a finding that the child cannot or should not be placed with either parent within a reasonable period of time. Pertinent to this case is R.C. 2151.414(E)(1), which states:
 {¶ 20} "Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties."
 {¶ 21} The record supports the trial court's determination that P.C. cannot and should not be returned to either parent because both Mother and Father had failed *Page 10 
continuously and repeatedly to substantially remedy the conditions that had caused P.C. to be placed outside the home.
 {¶ 22} Two witnesses testified for the Agency at the hearing on the Agency's motion for permanent custody. Social worker Knoefel testified that she was assigned to P.C.'s case in March 2006 and the original goal was reunification. The case plan formulated to achieve that goal, filed on April 10, 2006, required the parents to successfully address family violence, sexual abuse, substance abuse, and mental health issues and to complete parenting education classes.
 {¶ 23} Knoefel testified that although Mother had previously been diagnosed with paranoid schizophrenia, because Mother had withheld consent for the release of her psychological records, her existing psychological status, including whether she was participating in counseling or complying with her medication regimen, was unknown at the time of trial.
 {¶ 24} Nevertheless, Streetsboro police officer Andrew Suvada testified about Mother's psychological status several months prior to trial. Suvada testified that he was dispatched to appellants' home in March 2007, after receiving a report of a suicidal female. Suvada entered the trailer and found Mother sitting on the couch, with a couple cans of beer, two steak knives, and a small scalpel blade nearby. Suvada convinced Mother to go to the hospital, but as he was escorting her to an awaiting ambulance, she began screaming at Father, who was standing outside. *Page 11 
After the disturbance drew the attention of several neighbors, Mother became uncooperative and started screaming at Suvada to handcuff her. Suvada handcuffed her, put her in the ambulance, and accompanied her to the hospital, where she was admitted for several days.
 {¶ 25} Knoefel reported that the Agency had referred both Mother and Father for parenting education classes, due to the domestic violence in the home and P.C.'s report that she had to scavenge through dumpsters for food. Knoefel testified that Mother had started, but then stopped, the parenting education classes. She restarted the classes, but was ejected shortly thereafter for disruptive conduct.
 {¶ 26} Knoefel also testified that although Mother participated in a substance abuse assessment with Catholic Charities, which returned no recommendations, the Agency continued to have concerns about Mother's alcohol abuse. Knoefel reported that on an unannounced visit to appellants' home after the assessment, she detected an odor of alcohol on Mother and observed numerous beer cans strewn around the home. Knoefel also reported that both parents smelled of alcohol at hearings and at some of their visits with P.C., and Mother received a DUI citation subsequent to her assessment. In light of its concerns about Mother's substance abuse, the Agency requested that she complete another drug and alcohol assessment, but she never did so. *Page 12 
 {¶ 27} With respect to Father's completion of case plan objectives, Knoefel testified that although Father completed parenting education and domestic violence courses, he was arrested for domestic violence again in March 2007, within the same month that he had completed the courses. Additionally, an investigation of P.C.'s allegations that she was sexually abused by her father indicated that her allegation was credible. Father also refused to complete a drug and alcohol assessment or to sign consent forms that would have permitted the Agency to proceed with its investigations.
 {¶ 28} In light of this evidence, the trial court did not err in determining that notwithstanding reasonable efforts by CCDCFS to reunite P.C. with her parents, P.C. cannot and should not be placed with either parent within a reasonable time.
 {¶ 29} Father's argument that CCDCFS did not make reasonable efforts to prevent the continued removal of P.C. from the home has no merit. Despite Father's argument to the contrary, CCDCFS was under no obligation to file motions with the court to compel Father and Mother to sign releases so the Agency could determine whether they were complying with the substance abuse and mental health aspects of their case plan. Moreover, appellants' visits with P.C. were discontinued because appellants' hostility toward each other negatively impacted the child. Appellants never sought to have the court order suspending their visits modified. The record *Page 13 
demonstrates that CCDCFS made reasonable efforts to reunite P.C. with appellants, but they did not make similar efforts toward reunification.
B. Best Interest Determination
 {¶ 30} R.C. 2151.414(D) requires that in determining the best interest of the child, the court must consider all relevant factors, including, but not limited to: 1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers; 2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; 3) the custodial history of the child; 4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and 5) whether any of the factors in R.C.2151.414(E)(7) to (11) are applicable.
 {¶ 31} The statute requires a weighing of all the relevant factors and one factor is not given greater weight than the others. In reSchaefer, 111 Ohio St.3d 498, 2006-Ohio-5513, at ¶ 56. Not all the factors need to be present for the court to find that permanent custody is in the best interest of the child. In re Shaeffer Children (1993),85 Ohio App.3d 683, 692. Further, this court has stated that only one of the enumerated factors needs to be resolved in favor of the award of permanent custody. In re C.H., Cuyahoga App. Nos. 82258 and 82852,2003-Ohio-6854, at ¶ 34. *Page 14 
 {¶ 32} The record demonstrates that the trial court considered all the applicable factors and properly concluded that an award of permanent custody to the Agency was in P.C.'s best interest. At the hearing on the Agency's motion, P.C.'s guardian ad litem recommended that CCDCFS be granted permanent custody. He reported that P.C. had told him as recently as five days prior to the trial that she did not with to live with her parents and wanted to remain in her current placement. Additionally, as noted by the trial court, during the court's in-camera interview, P.C. "was very clear about her wish to grow up with her uncle and his family. She considers her uncle's children to be her siblings and is very much attached to this family."
 {¶ 33} In addition, the trial court found that the parents had admitted that P.C. had alleged that in March 2006, Father had touched her buttocks. Despite Father's argument that P.C.'s allegation of sexual abuse was "not an issue," an investigation by the Agency's Sex Abuse Unit indicated that the P.C.'s statements were reliable. The trial court further found that P.C. had lived with her uncle for over a year and had not visited with her parents in months. The trial court concluded that "given the totality of those circumstances," P.C.'s wishes to remain with her uncle and his family were "compelling."
 {¶ 34} In light of this evidence, the trial court properly determined that an order of permanent custody was in P.C.'s best interest. Mother's argument that the *Page 15 
Agency presented "no evidence" that permanent custody would be in P.C.'s best interest, as well as her argument that she was making significant progress on her case plan, is belied by the record. Likewise, the record clearly refutes Father's argument that the award of permanent custody was against the manifest weight of the evidence.
 {¶ 35} The evidence at the hearing on the Agency's motion for permanent custody demonstrated that appellants' problems with alcohol were unresolved, domestic violence between Mother and Father continued to occur, and Mother's mental status was precarious. P.C. had been placed with relatives who had expressed a desire to adopt her, and she had adjusted well to her placement and continued to improve. She had no desire to live with or even visit her parents and, in fact, had clearly expressed her desire to grow up with her uncle and his family. P.C.'s guardian ad litem also recommended permanent custody. Accordingly, the trial court did not abuse its discretion in awarding permanent custody to CCDCFS.
 {¶ 36} Mother's and Father's second assignments of error are overruled.
IV. Ineffective Assistance of Counsel {¶ 37} Finally, appellants contend that they were denied their constitutional right to effective assistance of counsel during the permanent custody hearing.
 {¶ 38} To establish ineffective assistance of counsel, appellants must demonstrate that their lawyers' performance fell below an objective standard of *Page 16 
reasonable performance and that they were prejudiced by that deficient performance. Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Brooks (1986), 25 Ohio St.3d 144. They must show that, but for their lawyers' deficient performance, the outcome of the hearing would have been different. Id.
 {¶ 39} An attorney is assumed to perform his duties ethically and competently. State v. Lytle (1976), 48 Ohio St.2d 391, 396. In addition, we will not second-guess strategic decisions of trial counsel, at least insofar as they are reasonable. Strickland, 466 U.S. at 689; State v.Hughbanks (Dec. 3, 1999), Hamilton App. No. C-980595.
 {¶ 40} Mother's argument that counsel should have objected to social worker Knoefel's testimony that Mother had been diagnosed with schizophrenia, because Knoefel was not an expert qualified to testify about such matters, is without merit, as Mother's mental status had already been documented in the record. Specifically, Mother stipulated to the amended allegations of the complaint that she "has a history of emotional and mental health issues which require consistent treatment. Mother has been diagnosed with paranoid schizophrenia and is currently bipolar."
 {¶ 41} Appellants' assertion that counsel should have objected to Knoefel's testimony regarding statements made to her by P.C. as inadmissible hearsay is likewise without merit, because, even assuming the testimony was inadmissible *Page 17 
hearsay, appellants have failed to demonstrate that they were prejudiced by admission of the disputed testimony. "Where a trial judge acts as the finder of fact, as in this case, a reviewing court should be reluctant to overturn a judgment on the basis of the admission of inadmissible testimony, unless it appears that the trial court actually relied on such testimony in arriving at its judgment, because the trial judge is presumed capable of disregarding improper testimony." In re D.W., Cuyahoga App. No. 84547, 2005-Ohio-1867, at ¶ 29, citing In re Sims
(1983), 13 Ohio App.3d 37, 41. Here, appellants offer nothing which demonstrates that the trial judge relied on the inadmissible hearsay or that the outcome of the proceeding would have been different absent the testimony. We find nothing in the record that overcomes the presumption that the trial judge disregarded any evidence that was not properly before her.
 {¶ 42} Finally, we are not persuaded by appellants' argument that counsel was ineffective for not calling them to testify. The decision whether to call a party as a witness falls within the purview of trial strategy. State v. Hunt, Cuyahoga App. No. 84528, 2005-Ohio-1871, at ¶ 16. Here, in light of Mother's and Father's failure to complete their case plans, there may have been several strategic reasons not to call them as witnesses. We will not second-guess counsel's strategy, especially in light of appellants' failure to demonstrate that they were prejudiced by not testifying.
 {¶ 43} Appellants' third assignment of error is overruled. *Page 18 
Affirmed.
It is ordered that appellee recover from appellants costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, P.J., and PATRICIA A. BLACKMON, J., CONCUR.
 APPENDIX Mother's Assignments of Error 1. The trial court committed reversible error by failing to comply with the mandatory requirements of Juvenile Rule 37 when it failed to supply a complete record of the proceedings.
 2. The trial court erred when it terminated appellant's parental rights and granted permanent custody.
 3. Appellant was denied effective assistance of trial counsel.
 Father's Assignments of Error *Page 19 1. The trial court committed reversible error by failing to comply with the mandates of Juvenile Rule 37 when it failed to supply a complete record of appellant's proceedings.
 2. The trial court erred in granting Cuyahoga County Department of Children and Family Services' motion for permanent custody as such decision was against the manifest weight of the evidence and resulted in a manifest miscarriage of justice.
 3. The defendant-appellant's due process rights and rights to fair trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10, of the Ohio Constitution were violated by ineffective assistance of counsel. *Page 1