JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant C. M.[1] ("father") appeals the juvenile court's order that awarded permanent custody of his son, C.P., to the Cuyahoga County Department of Children and Family Services ("CCDCFS"). He assigns the following three errors for our review:
 "I. The trial court committed prejudicial error and denied the father, [CM.], due process of law by accepting his admission to the original adjudication when the admission was not knowing, voluntary, and intelligent, in violation of the Fifth and Fourteenth Amendments to the United States Constitution, Article I, Sections 10 and 16 of the Ohio Constitution, and Juvenile Rule 29 and Adjudging [C.P.] to be a dependent child."
 "II. The trial court committed prejudicial error and denied the father, [CM.], due process of law by accepting his admission to the motion to modify temporary custody to permanent custody when the admission was not knowing, voluntary, and intelligent, in violation of the Fifth and Fourteenth Amendments of the United States Constitution, Article 1, Sections 10 and 16 of the Ohio Constitution, and Juvenile Rule 29 and awarding permanent custody of [C.P.] to CCDCFS."
 "III. The trial court's decision granting permanent custody of the child was contrary to the best interest of the child."
 {¶ 2} Having reviewed the record and pertinent law, we affirm the judgment of the trial court. The apposite facts follow.
 History {¶ 3} C.P. was born on October 20, 2006. Prior to the child being released from the hospital, CCDCFS filed a motion for predispositive emergency custody and temporary *Page 4 
custody, alleging C.P. was a dependent child. The trial court found probable cause to award emergency temporary custody; C.P. was the fourth child to be removed from his mother's care due to her chronic substance abuse. Two of the child's siblings were in foster care, and one sibling was adopted by his foster parents.
 {¶ 4} On December 14, 2006, the father appeared without counsel at the temporary custody hearing. The court had previously referred him to the public defender's office in order to obtain counsel. The court gave the father the option of continuing the matter until counsel was retained; however, he requested to proceed pro se. The mother failed to appear in spite of being properly served.
 {¶ 5} At the hearing, the father admitted that on November 7, 2006, he participated in genetic testing. This was his only admission at that hearing; the trial court engaged in a colloquy to determine it was made voluntarily, knowingly, and intelligently.
 {¶ 6} Because the father had not yet established paternity, the remainder of the hearing concerned evidence regarding the child's mother. Based on the evidence, the trial court adjudged the child to be dependent. At the father's request, the court continued the disposition for temporary custody.
 {¶ 7} Prior to adjourning the proceedings, the prosecutor mentioned to the court that the social worker was concerned the father was mentally delayed and may need a guardian ad litem (GAL). The child's GAL disagreed, stating that although the father had attended special education classes in school, he had obtained a high school degree and read at a high *Page 5 
school level. The trial court stated that based on the opinion of the child's GAL, it did not believe the father needed a GAL. However, because the father stated he would like a GAL, the court assigned one.
 {¶ 8} On January 17, 2007, the dispositional hearing was conducted. However, both the mother and father failed to appear. The trial court awarded temporary custody to CCDCFS based on testimony from the social worker, the child's GAL, and the father's GAL.
 {¶ 9} On August 27, 2007, CCDCFS filed a motion to modify temporary custody to permanent custody. A hearing was conducted on this motion on March 12, 2008. Present at the hearing was the father, his attorney, his GAL, the child's GAL, the social worker, the child's foster parents, two of the child's paternal aunts, and the paternal grandmother. The child's mother did not appear.
 {¶ 10} Prior to the trial court taking evidence, the father stated that he agreed to modifying custody from temporary custody to permanent custody. However, in exchange, he wanted CCDCFS to delete from its motion the clause stating, "There are no appropriate relatives of the child who are willing and able to provide the child a permanent home." CCDCFS agreed to delete this clause.
 {¶ 11} Before accepting the admission, the trial court personally addressed the father and apprised him of his constitutional rights and the ramifications of permanent custody. The father acknowledged that he understood. The court further informed the father that it was not *Page 6 
guaranteed that a relative would be allowed to adopt the child because once permanent custody was granted, CCDCFS would make the decision regarding adoption. The father stated he understood and that he still agreed CCDCFS should have permanent custody. The father's GAL informed the court that he believed the father understood everything the court explained and that his agreement to permanent custody was knowingly, intelligently, and voluntarily entered. Thereafter, the trial court accepted the father's admissions to the complaint after reading each allegation.
 {¶ 12} The trial court then considered the evidence regarding the mother. The evidence indicated the mother had shown no desire to have custody of the child and had a chronic substance abuse problem. The social worker and the child's GAL also testified that the child had been in the same foster home since birth. His foster parents had adopted his brother and wished to adopt C.P. In addition, the child has extreme special needs. He suffers from seizures and may have cerebral palsy; his foster parents were able to attend to his specialized health needs. As a result, he was doing well in the foster parents' care. The evidence also indicated that a paternal aunt was interested in adopting the child; her background and suitability were being investigated.
 {¶ 13} After considering the evidence, along with the father's admission, the trial court concluded that the child could not or should not be placed with either of the child's parents within a reasonable time and that permanent custody was in the child's best interest.
 Father's Admission at Temporary Custody Hearing *Page 7 {¶ 14} In his first assigned error, the father argues the trial court erred by accepting his admission made at the temporary custody hearing because it was not made in a knowing, voluntary, and intelligent manner as required by Juv. R. 29(D).
 {¶ 15} As an initial matter, we must address CCDCFS' argument that the father did not timely file his appeal of the decision awarding temporary custody to CCDCFS. "An adjudication by a juvenile court that a child is `neglected' or `dependent' * * * followed by a disposition awarding temporary custody to a public children services agency * * * constitutes a `final order' within the meaning of R.C. 2505.02 and is appealable to the court of appeals * * *."[2]
 {¶ 16} The record reflects that the order of the trial court adjudging the child dependent and placing him in the temporary custody of CCDCFS was journalized on January 17, 2007, at which point said order was a final, appealable order. The father did not file his appeal until May 1, 2008, well beyond the thirty-day appeal time. Therefore, we have no jurisdiction to consider this assigned error.
 {¶ 17} In so concluding, we note there is a split authority in this court as to whether the appellant must file an appeal from the temporary order, or whether the appellant under App. R. (4)(B) may wait until the permanent custody order is issued to appeal. In fact, this *Page 8 
issue is currently pending before the Ohio Supreme Court.[3] Until the Ohio Supreme Court decides this issue, we will follow this court's most recent opinion on this issue as set forth in In re P.C., [4] where we held that in In re P.C., the appellant must file an appeal within 30 days of the temporary custody order. Accordingly, because we have no jurisdiction to consider this error, the father's first assigned error is overruled.
 Father's Admissions at Permanent Custody Hearing {¶ 18} In his second assigned error, the father argues the trial court erred by accepting his admission that CCDCFS should obtain permanent custody of the child. He contends this admission and his admissions to the allegations in the complaint were not made in a knowing, voluntary, and intelligent manner. He specifically argues the trial court should not have accepted his response that he understood all the rights and ramifications as explained to him by the court. We disagree.
 {¶ 19} Juv. R. 29 outlines the procedure a trial court must follow upon the entry of an admission to the allegations of a complaint at an adjudicatory hearing. Specifically, Juv. R. 29(D) provides:
 "[t]he court may refuse to accept an admission and shall not accept an admission without addressing the party personally and determining both of the following: *Page 9 
 "(1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission;
 "(2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing."
 {¶ 20} The transcript of the adjudicatory hearing shows that the juvenile court advised the father regarding his right to trial, right to an attorney, CCDCFS' burden of proof, right to cross-examine CCDCFS' witnesses, right to subpoena witnesses, and right to remain silent. Prior to doing so, the court told CM. that he should immediately notify the court if he did not understand the court's explanation. After the court explained each right, it asked the father if he understood; he responded that he did.
 {¶ 21} The court then asked if he was under the influence of any drugs or alcohol, whether any threats or promises were made, and whether he could read and write. The trial court then explained to CM. that permanent custody meant that his parental rights to the child would be severed, and he would no longer have any say as to how the child was raised. The court also made clear that there was no guarantee that a relative would be allowed to adopt the child after the permanent custody was granted. The father stated he understood.
 {¶ 22} The court then went over each allegation in the complaint that pertained to the father and asked if he admitted or denied the allegation. He admitted to failing to comply with random urine screens, that the child has been with a foster family since birth, that he *Page 10 
was unable to provide the child with a secure, permanent placement, and that CCDCFS made reasonable and diligent attempts to reunify the child with family. These allegations are supported by the record. Based on this record, we conclude the trial court complied with Juv. R. 29(D) in accepting the father's admission. The cases the father relies on to support his argument to the contrary are easily distinguishable. InIn re M.C., [5] the court incorrectly advised the mother regarding the purpose of the hearing and the consequences of admitting to the allegations in the complaint. In In re S.G and M.G, [6] and In reA.D., [7] the trial court failed to advise the parents of any of their constitutional rights that were being waived in exchange for the admissions. In In re L.C., [8] it was clear from the record that the mother was confused and did not realize that the complaint stated that she could not care for the child because she was mentally retarded.
 {¶ 23} Unlike the above cases, the trial court in the instant case advised the father of all the constitutional rights he was waiving in exchange for his admissions, made sure he understood the proceedings, and explained that permanent custody would sever his rights to the child. *Page 11 
 {¶ 24} Although the court also asked the father's GAL if he believed his client understood what was explained, this was in addition to the trial court's addressing the father. The court was not relying solely on the GAL's opinion that the father understood the ramifications of his admissions. Accordingly, we conclude the trial court did not err in accepting the father's admissions. His second assigned error is overruled.
 Best Interest of the Child {¶ 25} In his third assigned error, the father contends that CCDCFS failed to provide clear and convincing evidence that permanent custody was in the child's best interest because the child's paternal aunt wanted to adopt him. We disagree.
 {¶ 26} When considering whether there is clear and convincing evidence that a child's best interest requires the court to grant permanent custody to a children services agency, the court must consider the following factors set forth in R.C. 2151.414(D):
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; *Page 12 
 "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 27} Although the court must consider all of the R.C. 2151.414(D) factors, only one of them needs to be resolved in favor of the award of permanent custody in order for the court to terminate parental rights.[9] "Clear and convincing" evidence is evidence sufficient to cause the trier of fact to develop a firm belief or conviction as to the facts sought to be established.[10] An appellate court will not reverse a trial court's decision on parental rights and custody unless it finds that the decision is unsupported by "sufficient evidence to meet the clear and convincing standard of proof."[11]
 {¶ 28} The findings of fact attached to the court's judgment entry granting the agency's motion for permanent custody show that the court considered the factors set forth in R.C. 2151.414(D)(1)-(4). In concluding permanent custody was in the best interest of the child, the court considered (1) the interactions between the child and his parents, siblings, relatives, and foster parents; (2) the custodial history of the child; (3) the child's need for a legally secure permanent home; and (4) the child's GAL report, which recommended permanent custody. *Page 13 
 {¶ 29} In addition to these factors, the court considered (1) that in spite of CCDCFS' reasonable and diligent efforts to reunify the child, the parents failed continuously and repeatedly to remedy the conditions that caused the child's removal; (2) the parents demonstrated a lack of commitment to the child by failing to regularly support, visit or communicate with the child; (3) the parents abandoned the child; and (4) the mother had parental rights terminated with respect to a sibling of the child.
 {¶ 30} We conclude sufficient evidence supported these findings. The father's parental case plan required him to establish paternity, be subjected to random urine analysis, attend parenting classes, and establish a safe and secure permanent home. The only part of the case plan the father complied with was establishing paternity.
 {¶ 31} Moreover, although the father contends permanent custody should have been granted to a relative, none of the relatives filed a motion for custody of the child. It appears from the permanent custody transcript that a paternal aunt wanted to adopt the child; however, she failed to file a motion for custody. Further, the trial court, prior to accepting the father's admissions, explained that once permanent custody was granted to CCDCFS, there was no guarantee that a family member would be permitted to adopt the child. Therefore, the father was fully aware CCDCFS may not approve of the aunt adopting the child. Accordingly, the father's third assigned error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed. *Page 14 
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Juvenile Court Division of the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, A.J., and COLLEEN CONWAY COONEY, J., CONCUR.
[1] The parties are referred to by their initials in accordance with this court's policy regarding non-disclosure of identities in juvenile cases.
[2] In re Murray (1990), 52 Ohio St.3d 155, at syllabus.
[3] In re H.F., 118 Ohio St.3d 1504, 2008-Ohio-3369.
[4] Cuyahoga App. Nos. 94540 and 90541, 2008-Ohio-3458.
[5] Cuyahoga App. Nos. 85054 and 85108, 2005-Ohio-1968.
[6] Cuyahoga App. No. 84228, 2005-Ohio-1163.
[7] Cuyahoga App. No. 87510, 2006-Ohio-6036.
[8] Cuyahoga App. No. 90390, 2008-Ohio-917.
[9] In re Z.T., Cuyahoga App. No. 88009, 2007-Ohio-827, at ¶ 56;In re T.M., Cuyahoga App. No. 83933, 2004-Ohio-5222.
[10] Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
[11] In re Dylan C. (1997), 121 Ohio App.3d 115, 121.