JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, L.K.,[1] appeals the decision by the Cuyahoga County Court of Common Pleas, Juvenile Division, granting permanent custody of her daughter, T.W., to the Cuyahoga County Department of Children and Family Services ("CCDCFS"). For the reasons that follow, we affirm the decision of the lower court.
 {¶ 2} T.W. was originally removed from appellant's home on January 8, 2002 due to assertions of neglect. The removal was prompted by a fatal incident occurring the day before, when T.W.'s six-month-old brother was found dead in appellant's home. At the time that the fatality occurred, appellant and the infant's father were admittedly using crack cocaine. While "coming down" from their drug-induced high, appellant and the infant's father fell asleep, leaving the infant in a carrier seat on the couch. When appellant awoke later that day, around 2:40 p.m., she found the infant "face down in his carrier" and "blue." At some point, the baby had flipped over and suffocated.
 {¶ 3} This court further notes that T.W.'s biological father has not been legally determined by any paternity actions, nor has the alleged father had much involvement in the child's life; he is not a party to this appeal. Thus, any issues pertaining to the father will not be addressed.
 {¶ 4} On January 9, 2002, the CCDCFS filed a negligence complaint against the appellant. Two days later, CCDCFS was given emergency custody of T.W., and on June 6, 2002, she was adjudicated to be a neglected child pursuant to an amended complaint. Subsequently, CCDCFS was awarded temporary custody, and a reunification case plan was instituted.
 {¶ 5} In October 2002, and again in September 2003, the CCDCFS filed extensions for temporary custody citing some progress on the part of the appellant. Then on January 22, 2004, the CCDCFS filed a motion for permanent custody. A hearing was held, at the conclusion of which the trial court deferred judgment pending an in camera interview with the child. That interview was held on October 28, 2004, and no record was made, giving rise to one of appellant's assignments of error. Finally on December 16, 2004, the trial court granted permanent custody of T.W. to CCDCFS for purposes of adoption.
 {¶ 6} Appellant now brings this appeal asserting three assignments of error for our review.
 {¶ 7} "I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND DENIED APPELLANT DUE PROCESS OF LAW BY FAILING TO MAKE A RECORD OF ITS INCAMERA INTERVIEW WITH THE MINOR CHILD AS REQUIRED BY JUV. R. 37(A)."
 {¶ 8} With appellant's first assignment of error, she argues the trial court denied her right to due process by failing to make a record of its in camera interview with the minor child. It is her contention that the trial court was required to make such a record pursuant to Ohio Juv.R. 37(A). We hold this assignment of error to be without merit.
 {¶ 9} Ohio Juv.R. 37(A) reads in pertinent part:
 {¶ 10} "The juvenile court shall make a record of adjudicatory anddispositional proceedings in abuse, neglect, dependent, unruly, and delinquent cases; permanent custody cases; and proceedings before magistrates. In all other proceedings governed by these rules, a record shall be made upon request of a party or upon motion of the court." (Emphasis added.)
 {¶ 11} Appellant argues that the in camera interview amounted to one of the "proceedings" for which Juv.R. 37 requires the juvenile court to make a record; however, this court has held that such in camera interviews fall under the category of "all other proceedings." Thus, a court is not required to make a record of an in camera interview absent such a request by a party. In In re Shannon R., this court stated:
 {¶ 12} "A review of the mother's motion for an in camera interview of Shannon reveals that she did not request that the court make a record of this hearing. Although this court has consistently held that the juvenile court's failure to follow the requirements of Juv.R. 37(A) and make an adequate record mandates reversal, those decisions all involved adjudicatory and dispositional proceedings * * * Here the in camera
interview falls in the category of `all other proceedings.'" In reShannon R., Cuyahoga App. No. 78811, 2002-Ohio-5, 9.
 {¶ 13} A review of the record reveals that, while the CCDCFS made the request for the in camera interview, at no time did any party request that the interview be recorded. Given the lack of such a request, the trial court did not violate any procedural requirements pursuant to Juv.R. 37. Therefore, appellant was not denied due process of law, and her first assignment of error fails.
 {¶ 14} "II. THE AGENCY FAILED TO MAKE A GOOD-FAITH EFFORT TO IMPLEMENT THE REUNIFICATION PLAN."
 {¶ 15} "III. THE JUDGMENT AWARDING PERMANENT CUSTODY OF [T.W.] TO THE AGENCY IS AGAINST THE WEIGHT OF THE EVIDENCE AND CONSTITUTES A DENIAL OF DUE PROCESS OF LAW. FOURTEENTH AMENDMENT, CONSTITUTION OF THE UNITEDSTATES; ARTICLE I, SECTION 16, CONSTITUTION OF THE STATE OF OHIO."
 {¶ 16} With her second and third assignments of error, appellant asserts substantive flaws in the ruling of the lower court. She contends that the trial court erred in granting permanent custody to the CCDCFS for two reasons, first accusing the CCDCFS of not making a good-faith effort to implement its reunification plan and then arguing that the ruling of the lower court was against the manifest weight of the evidence.
 {¶ 17} In regard to these assignments of error, this court would like to note for the record how very difficult it was to come to its final decision. It should also be noted that the record reflects that this was a difficult case for both the child's guardian ad litem and the CCDCFS's own social worker as well. However, after a thorough review of the facts and the applicable case law, we find appellant's second and third assignments of error to be without merit.
 {¶ 18} Because this permanent custody case was tried on a motion to modify temporary custody to permanent custody, the proceeding was governed by R.C. 2151.414(B), which states in pertinent part:
 {¶ 19} "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 20} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 21} "(b) The child is abandoned.
 {¶ 22} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 23} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 24} "For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home."
 {¶ 25} Once a court determines that one of the above conditions exist, it must then make its determination by considering the factors listed in R.C. 2151.414(D), as well as any other relevant factors. It is important to note that when R.C. 2151.414(D) applies, the court is not required to make a determination that the child cannot or should not be returned to either parent within a reasonable time. "The court does not need to determine that the child cannot or should not be placed with either parent within a reasonable time [when] the child has been in the temporary custody of one or more public children services agencies for more than 12 of the last 22 months." In re M.H., Cuyahoga App. No. 80620, 2002-Ohio-2968, at 25; See R.C. 2151.414(B); see, also, In reWilliams S., 75 Ohio St.3d 95, 99, 1996-Ohio-182, 661 N.E.2d 738.
 {¶ 26} Here, by the time CCDCFS filed its motion for permanent custody (in January 2004), T.W. had been in temporary custody since January 2002. That is well over 12 out of the last 22 consecutive months. Therefore, the remaining focus of the trial court was to determine what is in the best interest of this child, pursuant to R.C. 2151.414(B)(1)(d).
 {¶ 27} The goal of any disposition of a child is that disposition which is in the best interest of the child. In re Baby Girl Baxter
(1985), 17, Ohio St.3d 229, 17 Ohio B. 469, 479 N.E.2d 257. This must be the primary and overriding concern in any child custody case. In reHigby (1992), 81 Ohio App.3d 466, 611 N.E.2d 403. A court's failure to base its decision on a consideration of the best interests of the children involved constitutes an abuse of discretion. In re Adoption ofRidenour (1991), 61 Ohio St.3d 319, 574 N.E.2d 1055.
 {¶ 28} The Ohio Supreme Court defined "abuse of discretion" inBlakemore v. Blakemore as follows: "The term abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." (1983),5 Ohio St.3d 217, 219, 5 Ohio B. 481, 450 N.E.2d 1140, citing Steiner v.Custer (1940), 137 Ohio St. 448, 31 N.E.2d 855; Conner v. Conner (1959),170 Ohio St. 85, 162 N.E.2d 852. When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. In re Doe I (1990), 57 Ohio St.3d 135,137-385, 566 N.E.2d 1181, citing Berk v. Matthews (1990),53 Ohio St.3d 161, 559 N.E.2d 1301.
 {¶ 29} In this case, appellant alludes to her rights as a mother and the fact that she is trying very hard to refocus her life. This court visited this issue in In re Mayle (2000), Cuyahoga App. Nos. 76739, 77165. In Mayle, the court found that the trial court's decision committing the child of a minor mother to the legal custody of the foster parent for the minor mother as an abuse of discretion because that placement would not be in the best interest of the child, but would instead only preserve the parental rights of the minor mother with no regard to the child's need for a stable, permanent home. Hence, a trial court must give priority to the best interest of the child, not the parent, in reaching a decision regarding permanent custody. Id. As stated by the court in In re Awkal, "both the best interest determination and the determination that the child cannot be placed with either parent focus on the child, not the parent. R.C. 2151.414(C) prohibits the court from considering the effect the granting of permanent custody to a children services agency would have upon the parents." Awkal (1994),95 Ohio App.3d 309, 642 N.E.2d 424.
 {¶ 30} Furthermore, completion of a case plan does not, in and of itself, require that children be reunified with parents who have failed to remedy the conditions which led to removal in the first place. This argument, if accepted, would convert the goal of the reunification process into one of mere rigid compliance with the rules of CCDCFS rather than a process in which the parent learns to exercise her own judgment in a manner which will insure the protection and well-being of the children. In re McCutchen (1991), Knox App. No. 90-CA-25.
 {¶ 31} Being mindful of these underlying objectives of determining the permanent custody of a child, we now consider appellant's second and third assignments of error. Again, with her second assignment of error, appellant alleges the CCDCFS failed to make a good-faith effort to implement the reunification plan. "A good faith effort to implement a reunification plan `means an honest, purposeful effort, free of malice and the design to defraud or to seek an unconscionable advantage.' In reWeaver (1992), 79 Ohio App.3d 59, 63, 606 N.E.2d 1011. `The issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute.' In re Hughley
(2000), Cuyahoga App. No. 77052." In re Howard, Cuyahoga App. No. 78573, 2002-Ohio-5818.
 {¶ 32} In the case at bar, there is more than enough evidence provided in the record to demonstrate that a good faith effort was made to implement the reunification plan. First and foremost is the fact that the CCDCFS's motion for permanent custody only came after it had previously filed two extensions to maintain temporary custody in an effort to assist appellant in her reunification efforts. Furthermore, there is ample proof in the record to show that the CCDCFS social worker repeatedly made efforts to aid and help appellant with her substance abuse issues. These efforts more than satisfy a good faith effort requirement imposed on the agency. Thus, appellant's second assignment of error fails.
 {¶ 33} Finally, appellant argues that the ruling by the lower court was against the manifest weight of the evidence. It is well established that when some competent, credible evidence exists to support the judgment rendered by the trial court, an appellate court may not overturn that decision unless it is against the manifest weight of the evidence.Seasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80, 10 Ohio B. 407, 461 N.E.2d 1273; C.E. Morris Co. v. Foley Construction Co.
(1978), 54 Ohio St.2d 279, 280, 376 N.E.2d 578. However, the trial court's determination in a custody proceeding is only subject to reversal upon a showing of an abuse of discretion. In re Satterwhite, Cuyahoga App. No. 7071, 2001-Ohio-4137, citing Dailey v. Dailey (1945),146 Ohio St. 93, 64 N.E.2d 246; Trickey (1952), 158 Ohio St. 9, 13,106 N.E.2d 772. This reviewing court will not overturn a permanent custody order unless the trial court has acted in a manner that is arbitrary, unreasonable or capricious. See Blakemore v. Blakemore,
supra.
 {¶ 34} "The discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." In re Awkal, supra; Satterwhite, supra. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding (i.e., observing their demeanor, gestures and voice inflections and using these observations in weighing the credibility of the proffered testimony) cannot be conveyed to a reviewing court by a printed record. Miller v. Miller (1988), 37 Ohio St.3d 71, 74,523 N.E.2d 846, citing Trickey v. Trickey, supra. In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct. Seasons Coal Co.,Inc. v. Cleveland, supra. As the Supreme Court of Ohio stated, "it is for the trial court to resolve disputes of fact and weigh the testimony and credibility of the witnesses." Bechtol v. Bechtol (1990), 49 Ohio St.3d 21,550 N.E.2d 178.
 {¶ 35} Upon review of the record in the case at bar, we cannot find that the trial court abused its discretion in granting permanent custody of this child. The trial court was required to find that the child had been in the custody of CCDCFS for at least 12 months of a consecutive 22 month period and that permanent custody was in her best interest. As previously stated, the record clearly shows that first step has been satisfied.
 {¶ 36} After making this determination, the court is left to make a best interest determination pursuant to R.C. 2151.414(D):
 {¶ 37} "* * * The court shall consider all relevant factors, including, but not limited to, the following:
 {¶ 38} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 39} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 40} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 41} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 42} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 43} After reviewing this case to determine the best interest of this child, the trial court ultimately granted permanent custody to the CCDCFS, and we now affirm that determination. It is clear from the record that the central fact in the lower court's determination is that the appellant had continuously failed to substantially remedy the underlying conditions that prompted the child's removal from her home in the first place. Thus, appellant could not provide an adequate, permanent home for T.W., with emphasis on the need for permanency. Our review of the record reveals no flaw in that analysis and determination.
 {¶ 44} The record shows that the child was thriving in her foster home. It also appears that this foster parent is willing to adopt T.W., yet still allow the appellant to be involved in the child's life. This would provide T.W. with both a stable and permanent legal support through her adopted parents and still allow her to know and interact with her biological mother. Such stability did not appear to be available through either prolonging temporary custody or placing T.W. back in the home of the appellant.
 {¶ 45} Appellant, while making improvements in her substance abuse struggles, suffered periodic relapses and did not appear to take seriously her issues with alcohol. Questions also remain as to the adequacy of physical and emotional support the appellant could provide this child. We therefore find no abuse of discretion in the lower court's determination that granting permanent custody to the CCDCFS for the purposes of adoption was in T.W.'s best interest.
 {¶ 46} In these cases, this court recognizes that the right of a child to grow up in a safe and stable home, free of neglect, is paramount to a parent's right to raise that child. Pursuant to the totality of the underlying facts in this particular case, the lower court came to the ultimate conclusion that the best interest of this child would be best served by giving permanency to her upbringing in a safe and stable home. Accordingly, we find that the lower court's grant of permanent custody is not an abuse of discretion, and the appellant's final assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile court division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
GALLAGHER, J., AND CALABRESE, JR., J., CONCUR.
[1] The parties are referred to herein by their initials or title in accordance with this court's established policy regarding non-disclosure of identities in juvenile cases.