[Cite as *In re S.M.*, 2012-Ohio-5710.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No. 98543

---

# IN RE: S.M.
# A Minor Child

[Appeal By G.M., Father ]

---

**JUDGMENT:**
**AFFIRMED**

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division

Case No. AD 010922867

**BEFORE:**  Jones, J., Boyle, P.J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:**   December 6, 2012

**ATTORNEY FOR APPELLANT**

Susan J. Moran
55 Public Square
Suite 1616
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEES**

**For C.C.D.C.F.S.**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: Michelle A. Myers
Assistant County Prosecutor
4261 Fulton Parkway
Cleveland, Ohio 44144

Yvonne C. Billingsley
3955 Euclid Avenue, Room 305E
Cleveland, Ohio 44115

**For Guardian Ad Litem**

Irina Vinogradsky
Law Offices of Irina Vinogradsky
27600 Chagrin Blvd.
Suite 420
Woodmere, Ohio 44122

LARRY A. JONES, SR., J.:

{¶1} Appellant G.M., the legal Father of S.M., appeals from the trial court's judgment granting permanent custody of S.M. to the Cuyahoga County Department of Children and Family Services ("CCDCFS" or "the Agency").   We affirm.

## I.   Procedural History

{¶2} In December 2010, CCDCFS filed a complaint alleging S.M. to be dependent and requesting that the Agency be granted protective supervision of the child, who resided with Mother.   Almost two weeks later, the Agency requested removal of S.M. from Mother's home; the trial court granted the request.   CCDCFS also filed a motion for an order of pre-disposition temporary custody, which the trial court granted pending further hearing.

{¶3} The Agency filed an amended complaint in January 2011, in which it sought a disposition of temporary custody.   In February 2011, S.M. was adjudicated dependent and committed to the Agency's temporary custody.

{¶4} In November 2011, CCDCFS filed a motion to modify temporary custody to permanent custody.   A hearing on the motion was held in May 2012.   Mother stipulated to a

finding under R.C. 2151.414(E) that the child could not or should not be placed with her within a reasonable period of time and that, under R.C. 2151.414(D), granting permanent custody to the Agency was in the best interest of the child.

{¶5} Father failed to appear at the hearing, and his attorney's request for a continuance of the hearing was denied. After hearing the testimony of the assigned social worker and considering the exhibits entered into evidence, the trial court granted the Agency's motion for permanent custody.

## II. Facts

{¶6} S.M. was born in October 2010, at 37 weeks, weighing two pounds, and remained hospitalized for the first three weeks of life due to numerous medical issues. Mother had a substance abuse problem, and S.M. was initially diagnosed with fetal alcohol effect; the diagnosis was later changed to fetal alcohol syndrome. Father is not the child's biological father, but signed a parenting affidavit, establishing him as S.M.'s legal father. The child was released from the hospital to the care of Mother and Father.

{¶7} In December 2010, Mother and Father were involved in a domestic violence incident with one another, which resulted in both being arrested. Both parents were intoxicated at the time of the incident. As a result of the incident, the child, nearing two

months of age, was committed to the Agency's custody and placed in a foster home, where she remained for the entirety of the year-and-a- half proceedings.

{¶8} During the proceedings, a case plan was developed for Mother and Father. Relative to Father, the social worker met with him and discussed the plan. Father had been convicted of sexual battery of his 14-year-old stepdaughter. The social worker told Father that, because of the conviction, CCDCFS would not recommend that he be granted custody of S.M., but because the decision was ultimately for the court, the Agency would develop a plan in attempt for his reunification with the child. The plan included substance abuse assessment and treatment and domestic violence counseling. The social worker testified that, for effectiveness, the plan called for Father completing the substance abuse component before moving on to the domestic violence component.

{¶9} Father had a ten-year history of alcohol abuse and inability to maintain sobriety, despite completion of two prior substance abuse programs. Under his case plan here, Father completed a substance abuse assessment and was recommended for outpatient treatment. Father began a treatment program, but did not complete it because he was incarcerated. Upon his release from incarceration, he started treatment again, but only attended two sessions, claiming that he was unable to further participate because of his work schedule. In an attempt

to accommodate his work schedule, the Agency offered another treatment program, but Father never participated.

{¶10} The Agency also referred Father for random urinalysis testing. He initially attended the screenings when requested, but eventually stopped participating. At the time of the permanent custody hearing, Father had not completed any screenings for the preceding two months.

{¶11} In regard to the domestic violence component of Father's case plan, CCDCFS never referred him for counseling because he failed to complete the substance abuse treatment portion of his case plan. Father had a history of a domestically violent relationship with Mother and had been charged with menacing by stalking. At the time of the permanent custody hearing, none of Father's issues with domestic violence had been addressed.

{¶12} During the time S.M. was in the Agency's custody, Father was offered supervised visitation. Initially, the visits occurred weekly for two hours. However, as Father failed to participate in services offered as part of his case plan, the visits were changed to twice a month for two hours. Father initially participated in those visits, but then stopped, and had not visited with S.M. for the two months preceding the permanent custody hearing.

{¶13} The social worker testified that S.M.'s medical issues continued throughout the pendency of the case, and the foster parents consistently attended to her medical needs. With

the exception of one hospital visit after S.M. had had surgery, Father was not involved in S.M.'s medical care. The social worker further testified that S.M. was "very, very bonded to both of the foster parents as well as their extended family and their children." It was the foster parents' desire to adopt S.M.

{¶14} In her report, S.M.'s guardian ad litem recommended that it was in the best interest of S.M. that the Agency be granted permanent custody of the child. The guardian stayed with that recommendation after the hearing, stating that S.M. is a "very, very fragile little girl and she needs a lot of care. And I don't believe that [either] of the parents are stable enough or giv[ing] them time will change anything * * *."

{¶15} At the conclusion of the hearing, the trial court awarded permanent custody of S.M. to CCDCFS. Father now appeals, raising two assignments of error:

> I. The trial court erred by granting permanent custody to CCDCFS when the decision was not supported by the evidence.

> II. The trial court erred in granting permanent custody finding it was in the best interest of the child.

### III. Law and Analysis

{¶16} Father's assignments of error are related and we consider them together. R.C. 2151.414 sets forth a two-prong analysis to be applied by the juvenile court for a determination of whether permanent custody should be granted to an agency. The statute

requires the court to find, by clear and convincing evidence, (1) one of the factors enumerated in R.C. 2151.414(B)(1)(a)-(d), and (2) that an award of permanent custody is in the best interest of the child.

{¶17} Clear and convincing evidence is that which will produce in the trier of fact "'a firm belief or conviction as to the facts sought to be established.'" *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. While requiring a greater standard of proof than a preponderance of the evidence, clear and convincing evidence requires less than proof beyond a reasonable doubt. *In re Parsons*, 9th Dist. Nos. 97CA006662 and 97CA006663, 1997 Ohio App. LEXIS 5141 (Nov. 12, 1997).

{¶18} Here, in considering the factors under R.C. 2151.414(B)(1)(a)-(d), the trial court found, under subsection (a), that "[t]he child cannot and/or should not be placed with her parents within a reasonable time." Appellant cites to the following as grounds for reversal of the court's finding: (1) his completion of the substance abuse assessment and attendance at several counseling sessions; (2) the Agency's failure to refer him for domestic violence counseling; (3) his visitation with S.M., which the social worker described as "appropriate"; (4) his clean weekly urine samples for four months; and (5) the social worker's "revelation"

that the Agency "never attempted to unify the child with her Father because of the Father's prior criminal history."

{¶19} The Agency's plan for Father included substance abuse assessment and treatment and domestic violence counseling. In regard to the substance abuse component, Father did complete the assessment portion of the plan, but failed to complete the treatment portion. Although Father began a treatment program, he did not complete it because he was incarcerated. He started treatment again after his release, but only attended two sessions, claiming that he was unable to further participate because of his work schedule. Father never participated in another program the Agency offered in an attempt to accommodate his work schedule.

{¶20} Further, although Father initially attended the urine screenings when requested, he eventually stopped participating. At the time of the permanent custody hearing, Father had not completed any screenings for the preceding two months. On this record, the trial court did not err in finding that S.M. could not or should not be placed with Father because of Father's failure to complete the portion of his case plan relative to substance abuse treatment.

{¶21} We are also not persuaded by Father's claim that the trial court erred in finding that S.M. could not or should not be placed with him because the Agency failed to refer him for domestic violence counseling. The social worker explained that Father was never

referred for domestic violence counseling because he failed to complete the substance abuse treatment portion of his case plan. By Father's admission, as stated in the guardian's report, his domestic violence issues were due to his consumption of alcohol. Therefore, the lack of referral for domestic violence counseling was due to the fact that Father did not comply with his case plan as required.

{¶22} In regard to Father's visitation with S.M., the visits initially occurred weekly for two hours. However, as Father failed to participate in services, the visits were changed to twice a month for two hours. Father initially participated, but then stopped, and had not visited with S.M. for the two months preceding the permanent custody hearing. As such, although Father did visit some with S.M., the visitation was not consistent.

{¶23} Father's final ground upon which he seeks reversal of the trial court's finding that S.M. could not or should not be placed with him is not supported by the record. Father claims that the Agency "never attempted to unify the child with her Father because of the Father's prior criminal history." The social worker testified that it would not be the Agency's *recommendation* to the trial court that custody of S.M. be given to Father, but that the Agency would work with Father to develop a case plan and help him meet its requirements. The social worker testified that she explained to Father the ultimate decision was with the trial

court.   The record demonstrates that the Agency did in fact develop a case plan for Father and attempted to help him fulfill it, but Father failed to complete the requirements of the plan.

{¶24} In light of the above, clear and convincing evidence supports the trial court's finding that S.M. should not or could not be placed with Father.

{¶25} With regard to the "in the best interest of the child" determination, Father contends that CCDCFS failed to present sufficient evidence that granting permanent custody of S.M. to the Agency would be in the child's best interest.   We disagree.

{¶26} R.C. 2151.414(D)(1)(a) through (e) set forth the relevant factors that a court must consider in determining the best interest of the child.   These factors include, but are not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶27} This court has stated that only one of these enumerated factors needs to be resolved in favor of the award of permanent custody. *In re Moore*, 8th Dist. No. 76942, 2000 Ohio App. LEXIS 3958 (Aug. 31, 2000), citing *In re Shaeffer Children*, 85 Ohio App.3d 683, 621 N.E.2d 426 (3d Dist.1993); *In re C.H.*, 8th Dist. Nos. 82258 and 82852, 2003-Ohio-6854.

{¶28} We review a trial court's determination of a child's best interest under R.C. 2151.414(D) for an abuse of discretion. *In re: D.A.*, 8th Dist. No. 95188, 2010-Ohio-5618, ¶ 47. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "While a trial court's discretion in a custody modification proceeding is broad, it is not absolute, and is subject to reversal upon a showing of abuse of discretion." *In re Mayle*, 8th Dist. Nos. 76739 and 77165, 2000 Ohio App. LEXIS 3379 (July 27, 2000), citing *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). A trial court's failure to base its decision on a consideration of the best interests of

the child constitutes an abuse of discretion. *In re T.W.*, 8th Dist. No. 85845, 2005-Ohio-5446, *appeal not allowed by*, 108 Ohio St.3d 1418, 2006-Ohio-179, 841 N.E.2d 321, citing *In re Adoption of Ridenour*, 61 Ohio St.3d 319, 574 N.E.2d 1055 (1991).

{¶29} The trial court here found that S.M. was "extremely bonded" with the foster parents and family. Father contends that the court failed to consider his interactions with S.M. Although Father did initially participate in visitations with S.M., he stopped, and had not visited with the child for the two months preceding the permanent custody hearing. Further, S.M.'s medical issues persisted throughout the case, and with the exception of one hospital visit after S.M. had had surgery, Father was not involved in S.M.'s medical care.

{¶30} Moreover, from the time S.M. was removed from her parent's care until the permanent custody hearing, she had been in the care of the same foster family for a year-and-a-half.

{¶31} Finally, Father contends that the trial court never considered whether an alternative to permanent custody existed. Father cites the social worker's testimony that the Agency was not going to recommend that he be given custody because of his prior conviction. Again, that was the Agency's recommendation. The Agency was not the final arbiter; the trial court was. And the testimony from the hearing established that there was no other viable option to a grant of permanent custody. The social worker testified that she explored

placement options for S.M. She spoke with Father's brother and sister-in-law once, and then did not hear back from them. The social worker was contacted by Father's sister, but she ultimately decided that she did not want to get involved.

{¶32} On this record, the trial court did not abuse its discretion in finding that it was in S.M.'s best interest to be placed in the permanent custody of CCDCFS. Further, clear and convincing evidence supports the trial court's finding that S.M. should not or could not be placed with Father. Father's two assignments of error are therefore overruled.

{¶33} Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

MARY J. BOYLE, P.J., and
EILEEN A. GALLAGHER, J., CONCUR