[Cite as *In re R.D.W.*, 2021-Ohio-4305.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE R.D.W., ET AL.    :

             No. 110662

Minor Children      :

[Appeal by A.W., Mother]   :

_____

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 9, 2021

_____

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD-19-907047, AD-19-907048, AD-19-907049 and AD-19-907050

_____

***Appearances:***

Valore & Gordillo L.L.P. and Matthew O. Williams, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee.*

EILEEN A. GALLAGHER, P.J.:

{¶ 1} This appeal is from a permanent custody determination made by the Juvenile Division of the Cuyahoga County Court of Common Pleas, which awarded permanent custody to the Cuyahoga County Division of Children and Family Services ("Agency"). A.W. ("Mother") appeals that court's decision and assigns two

errors for our review. For the reasons set forth below, we overrule the assignments of error and affirm the judgment of the trial court.

## I. Factual Background and Procedural History

### A. Agency Complaints and Case Plan for the Parents

**{¶ 2}** Mother gave birth to four boys: R.D.W., Jo.W., Ja.W. and R.G. R.D.W.'s father is R.G. Sr. ("Father") who is also the alleged father of the two youngest boys: Ja.W. and R.G. but he has yet to establish paternity for those two children.

**{¶ 3}** J.W. is the father of Jo.W. J.W. has not participated in the actions below.

**{¶ 4}** When Mother was giving birth to her youngest son,[1] she tested positive for cocaine and marijuana.

**{¶ 5}** Because of the positive drug test, on June 5, 2019, the Agency filed four complaints for abuse and neglect related to each of the children. R.D.W. in Case No. AD-19-907047; Jo.W. in Case No. AD-19-907050; Ja.W. in Case No. AD-19-907049; and R.G. in Case No. AD-19-907048. Along with the complaints, the Agency moved for temporary custody.

**{¶ 6}** At the time the Agency filed the complaints, Father had legal custody of R.D.W. in connection with a previous juvenile complaint[2] because mother could

---

[1] Initially, R.G.'s complaint identified him as Z.W. However, prior to the permanent custody hearing, the Agency procured his birth certificate that identified his given name as R.G.

[2] The Agency dismissed that complaint prior to filing the complaint in this action.

not provide R.D.W. with stable housing. According to the complaint, Father was abusing marijuana and R.D.W. had over 40 days of unexcused absences from school. Further, Mother had a substance abuse problem with cocaine and marijuana and did not have stable housing because she had resided at four different addresses in the prior 18 months. Jo.W., like R.D.W., had multiple unexcused absences from school.

{¶ 7} The motion for temporary custody came for a hearing on June 6, 2019. Neither Mother nor Father appeared. The magistrate awarded emergency temporary custody to the Agency following the hearing.

{¶ 8} On August 8, 2019, Mother moved the court to grant temporary custody to Paris Cole, a family friend. On August 14, 2019, Mother and Father stipulated to the allegations of an amended complaint. Based on the stipulations, the magistrate adjudicated the children as neglected and the Agency developed a case plan.

{¶ 9} Initially, the children were placed with a maternal cousin. However, due to parental conflicts, the children were ultimately placed with Paris Cole, the family friend mentioned above.

{¶ 10} The case plan for Mother provided that she complete a parenting program as well as a drug and alcohol assessment and then attend, participate and successfully complete any recommended treatment.

{¶ 11} The case plan for Father was similar to that of Mother. Father was required to attend and complete a parenting program, a drug and alcohol assessment and establish paternity for the two youngest boys.

{¶ 12} Mother completed a parenting program through Beech Brook on February 4, 2020. Father also completed a parenting program and then filed a motion for legal custody of R.D.W., Ja.W. and R.G. asserting that, because he had completed his parenting referral, he had substantially complied with the requirements of the case plan. Father never completed the drug or alcohol assessment let alone any treatment and has yet to establish paternity for the two youngest children.

{¶ 13} On February 18, 2020, the Agency moved the court to modify temporary custody to permanent custody. The affidavit attached to the motion avers that Mother completed a substance abuse assessment and was recommended to complete an intensive outpatient program. However, Mother failed to complete treatment. She subsequently was referred for another substance abuse assessment but failed to complete that treatment program, as well.

{¶ 14} The Agency, due to unruly behavior of the parents at visits which occurred in the presence of the children, amended the case plan and suspended visitation until each parent completed an anger management course.

{¶ 15} On March 1, 2021, Mother moved that the court award legal custody to Yvonne McCoy, a family friend.

**B. Disposition Hearing**

{¶ 16} On June 14, 2021, the matter came for a dispositional hearing before the magistrate at which time Mother's motion for a continuance was denied. The magistrate proceeded to hear testimony and found, by clear and convincing evidence, that the children could not be placed with either Mother or Father.

{¶ 17} At the hearing, the Agency produced two witnesses.

{¶ 18} Jasmine Lynard testified that she was the social worker for the children. She testified that the Agency had temporary custody of the children since June 2019. She testified that Mother completed the parenting and anger management referrals but, other than assessments, Mother did not successfully complete any of the substance abuse treatment programs to which she was referred.

{¶ 19} For substance abuse, the Agency referred Mother to New Visions, Women's Recovery, Hitchcock House and Community Assessment and Treatment Services ("CATS"). Mother entered the intensive outpatient program at New Visions but "stopped going" and did not complete treatment. Women's Recovery likewise assessed Mother for an intensive outpatient program, and Mother stopped going without successfully completing that program. Mother then entered the inpatient program at Hitchcock House but voluntarily left before completing that program. Finally, Mother left the intensive inpatient treatment program at CATS just before the dispositional hearing.

{¶ 20} Mother did not cooperate with drug-screen requests from the Agency. She did, however, provide urine specimens for testing for New Visions and CATS. Her urine specimens at CATS were positive for marijuana.

{¶ 21} After Lynard's testimony, the Agency called Dr. Sheila Ferguson to testify. Dr. Ferguson is the director of community-based services at the Fatima Center, which is operated by the Catholic Charities Corporation of Cleveland. This is the location where the Agency scheduled many of the parental visits with the children. Dr. Ferguson testified that Father and Mother clearly loved their children and that the family "always had a great time together." She also testified that Father was occasionally "abusive with Mom in terms of name calling and blaming her as the reason the kids were in care" and that these disparaging comments were made in front of the children. She also testified, however, that Mother and Father acted appropriately when they were interacting *with* the children.

{¶ 22} The magistrate found that Mother had a chemical dependency that is so severe that it makes her unable to provide an adequate permanent home for the children and that Father similarly suffers from a chemical dependency. Furthermore, while Mother began or completed some services, she did not complete an intensive outpatient or inpatient treatment program despite numerous referrals. Father only completed the referral for parenting and nothing else. Neither Mother nor Father reliably provided urine screens to the Agency. Accordingly, the magistrate granted the Agency's motion for permanent custody. The trial court

overruled the parent's objections and adopted the magistrate's decision on July 1, 2021.

## II. Standard of Review

{¶ 23} When proceeding via motion for permanent custody "the trial court must find by clear and convincing evidence: (1) the existence of any one of the conditions set forth in R.C. 2151.414(B)(1)(a) through (d) and (2) that granting permanent custody to the agency is in the best interest of the child." *In re M.S.*, 2015-Ohio-1847, 34 N.E.3d 420, ¶ 27 (8th Dist.). Appellant's brief does not challenge any finding under R.C. 2151.414(B).

> [T]he juvenile court may "[c]ommit the child to the permanent custody of a public children services agency," if the court determines (1) in accordance with R.C. 2151.414(E) that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and (2) in accordance with R.C. 2151.414(D)(1) that the permanent commitment is in the best interest of the child.

*In re L.S.*, 2021-Ohio-510, 168 N.E.3d 149, ¶ 42 (8th Dist.), quoting R.C. 2151.414(C).

{¶ 24} "Clear and convincing evidence" is that measure or degree of proof that is more than a "preponderance of the evidence," but does not rise to the level of certainty required by the "beyond a reasonable doubt" standard in criminal cases. *In re M.S.*, 8th Dist. Cuyahoga Nos. 101693 and 101694, 2015-Ohio-1028, ¶ 8, citing *In re Awkal*, 95 Ohio App.3d 309, 315, 642 N.E.2d 424 (8th Dist.1994), citing *Lansdowne v. Beacon Journal Publishing Co.*, 32 Ohio St.3d 176, 180-181, 512 N.E.2d 979 (1987). It "produces in the mind of the trier of fact a firm belief or

conviction as to the facts sought to be established." *In re M.S.*, 2015-Ohio-1847, at ¶ 18; *see also In re J.F.*, 11th Dist. Trumbull No. 2011-T-0078, 2011-Ohio-6695, ¶ 67 (a permanent custody decision "'based on clear and convincing evidence requires overwhelming facts, not the mere calculation of future probabilities'") (emphasis omitted), quoting *In re A.J.*, 11th Dist. Trumbull No. 2010-T-0041, 2010-Ohio-4553, ¶ 76.

{¶ 25} We review a juvenile court's determination of a child's best interest under R.C. 2151.414(D) for abuse of discretion. *In re D.A.*, 8th Dist. Cuyahoga No. 95188, 2010-Ohio-5618, ¶ 47. An abuse of discretion is more than a mere error of law or judgment; it implies that the court's decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). While a juvenile court's discretion in a custody proceeding is broad, it is not absolute. "A trial court's failure to base its decision on a consideration of the best interests of the child constitutes an abuse of discretion." *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, ¶ 60, citing *In re T.W.*, 8th Dist. Cuyahoga No. 85845, 2005-Ohio-5446, ¶ 27, citing *In re Adoption of Ridenour*, 61 Ohio St.3d 319, 574 N.E.2d 1055 (1991).

## III. Analysis and Argument

{¶ 26} Mother appeals from the determination of the trial court granting the Agency's motion for permanent custody and raises two assignments of error. However, we overrule Mother's assignments of error and affirm the judgment of the trial court because the Ohio Revised Code prohibited any further extension of the

temporary custody arrangement and there was competent, credible evidence that there was no appropriate alternative to granting the Agency's motion.

> Assignment of Error No. 1: The trial court's award of permanent custody and termination of appellant's parental rights is against the manifest weight of the evidence.

{¶ 27} Mother raises two arguments under this assignment of error. She contends that trial court should have determined that granting the Agency's motion for permanent custody was not in the best interests of the children because there were other potential custodians and Mother could have regained custody with only "a little more time."

{¶ 28} Mother first contends that the trial court erred because she put forward at least eight individuals as potential placements yet not a single investigation took place. The Revised Code requires the trial court to consider the appropriateness of placement with relatives or interested persons identified in a motion for legal custody of the child. R.C. 2151.414(D)(2)(d). Further, the Revised Code requires the trial court to consider whether "a legally secure permanent placement * * * can be achieved without a grant of permanent custody to the agency[.]" R.C. 2151.414(D)(1)(d).

{¶ 29} Mother named Paris Cole and Yvonne McCoy as potential custodians. Paris Cole was identified in a motion for temporary custody. Lynard testified that she had not been able to talk with Yvonne McCoy and that the previous guardian ad litem ("GAL") stated that Yvonne McCoy said she was not able to take the children.

The children were placed with an interested individual, but she ended up disrupting and then I did get a name from mom. I think that was another interested individual, but I reached out to her. We kind of played phone tag and then when I spoke with the GAL, the previous GAL, Mr. Miles, he did express to me that the interested individual stated that she couldn't do it [any] more. So I haven't had a conversation with her and that was the last person that was provided.

\* \* \*

Q. And have you asked [M]other and/or [Father] about possible family placements for these children?

A. Yeah.

Q. And were they ever able to provide you with anything other than that last interested individual?

A. They provided a few people. Mom and provided — at one point in time she had mentioned her mom, she mentioned her sister, but the most recent was the interested individual that the children were placed with and then the lady that I played phone tag with earlier this year.

Q. Were any of those family members appropriate or willing to take placement or custody of these children?

A. No.

{¶ 30} In context, the social worker testified that when Mother provided the name of a potential custodian, the Agency then determined whether or not the proposed custodian was appropriate. The social worker testified that some of the individuals, when contacted, stated they could not take custody of the children, some simply never responded to the social worker and one had an open case with the Agency concerning her own children.

{¶ 31} Appellant complains that not a single investigation took place but Lynard testified that none of the potential custodians ever progressed to the point that a detailed investigation would have been warranted.

{¶ 32} Thus, the trial court did not abuse its discretion in determining that the best interests of the children supported placing the children in the permanent custody of the Agency.

{¶ 33} Second, Mother contends that the trial court erred in determining that the children could not be placed with Appellant within a reasonable period of time. Mother argues that she "had completed the majority of her case plan objectives * * * all that she needed was a little more time."

{¶ 34} The Ohio Revised Code prohibits a trial court from continuing a temporary placement of a parent for more than two years. R.C. 2151.353(G).

{¶ 35} Here, the trial court granted the Agency's motion for temporary custody on June 6, 2019. The magistrate issued her judgment on June 16, 2021, which is more than two years after the start of the temporary custody and the trial court did not enter its judgment on the docket until July 1, 2021. Thus, the Ohio Revised Code prevented the trial court from allowing any further extensions of the temporary placement of the children.

{¶ 36} Appellant contends that, because of the March 27, 2020 tolling order issued by the Supreme Court of Ohio, the trial court had the authority to extend temporary custody to the Agency to give her more time. This court has rejected the application of the tolling order to the two-year limitation on temporary custody.

"The two-year time limit is not a rule imposed by the Supreme Court of Ohio. Thus, it is unaffected by the tolling order." *In re T.W.,* 8th Dist. Cuyahoga No. 109967, 2021-Ohio-2031, ¶ 47. Accordingly, the trial court did not err in determining that R.C. 2151.353(G) provided that "the court shall not order an existing temporary custody order to continue beyond two years after the date on which the complaint was filed or the child was first placed into shelter care, whichever date is earlier[.]"

{¶ 37} The trial court did not err in determining that the Mother had "a chemical dependency that is so severe that it makes [her] unable to provide an adequate, permanent home for [each child]." R.C. 2151.414(E)(2) and (D)(2)(a). Thus, the trial court did not err in determining that the children could not be placed with either parent within a reasonable time. Further, the order establishes that the trial court considered all relevant factors in determining the best interests of the children. R.C. 2151.414(D)(1). As noted above, the trial court had no authority to extend the current temporary custody arrangement and the children had been in the temporary custody of a public children services agency for 12 or more months of a consecutive 22-month period. Thus, the trial court did not err in granting the motion of the agency for permanent custody. *See* R.C. 2151.414(B)(1). Accordingly, we overrule Appellant's first assignment of error.

> Assignment of Error No. 2: Appellant was denied effe[c]tive assistance of counsel and prejudiced thereby.

{¶ 38} In her second assignment of error, Mother contends that trial counsel was ineffective insofar as trial counsel failed to call any witnesses to support placement of the children with one of the individuals she named.

{¶ 39} "This court has recognized that the right to effective assistance of trial counsel attaches only to criminal proceedings and to proceedings for the permanent, involuntary termination of parental rights." *In re C.M.C.*, 8th Dist. Cuyahoga Nos. 109545 and 109546, 2021-Ohio-314, ¶ 28, quoting *In re M.I.S.*, 8th Dist. Cuyahoga No. 98138, 2012-Ohio-5178.

> To establish ineffective assistance of counsel, a defendant must demonstrate (1) that counsel's performance fell below an objective standard of reasonable representation and (2) that he was prejudiced by that performance. Prejudice is established when the defendant demonstrates a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at ¶ 29, quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶ 40} Appellant contends that she was prejudiced by her counsel's failure to subpoena the proposed custodians to establish a placement for the children with persons other than the Agency. However, the only evidence in the record are the reasons set forth by the social worker that the Agency determined that these persons were either inappropriate or not interested in having permanent custody of the children. As noted by the Agency on appeal, no evidence was produced concerning what those witnesses would have said had they been subpoenaed to testify.

Accordingly, Mother has not shown that, but for counsel's alleged deficiency, there was a reasonable probability that the result would have been different.

{¶ 41} Accordingly, we overrule Mother's second assignment of error.

{¶ 42} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

MICHELLE J. SHEEHAN, J., and
EILEEN T. GALLAGHER, J., CONCUR